UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PATRICK VIEIRA,

                       Plaintiff,

-against-

UNITED STATES OF AMERICA,

                       Defendant.
------------------------------------------------------------X

**DECISION AND ORDER**

17 Civ. 10132 (PED)

**PAUL E. DAVISON, U.S.M.J.**

      Plaintiff Patrick Vieira alleges that, on May 20, 2014, he was walking down cement stairs on the loading dock of a building located on the campus of the United States Military Academy at West Point ("USMA"), when the stairs crumbled beneath his feet and caused him to fall. He claims that he lost consciousness and sustained injuries, including an injury to his lumbar spine which required surgery to repair. Plaintiff commenced this action pursuant to the Federal Tort Claims Act ("FTCA"), seeking damages against the United States of America for its alleged negligence as property owner. This case is before me for all purposes on the consent of the parties, pursuant to 28 U.S.C. §636(c) (Dkt. #9).

      By Decision and Order dated November 5, 2018 (Dkt. #26), familiarity with which is presumed, this Court denied defendant's motion to dismiss for lack of subject matter jurisdiction. In sum, defendant argued that plaintiff's tort claim is subject to the discretionary function exception (and thus barred by sovereign immunity) because the USMA has discretion to determine the priority of any structural repairs. I found that defendant had "sufficiently demonstrated that prioritizing Work Orders at the West Point campus is clearly a discretionary

function based upon policy considerations of operational needs, regulatory mandates and available funding." Dkt. #26, at 6-7. I concluded, however, that plaintiff's negligence claim would not be barred by the discretionary function exception if plaintiff established that defendant: (1) failed to inspect Building 845 and/or to generate a Work Order for renovation/repair of its loading dock; or (2) failed to warn plaintiff about the loading dock's condition. Id. at 7-9.

Presently before this Court is defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, defendant's motion is **GRANTED IN PART.**

A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material within the meaning of Rule 56 where it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. at 248. In determining whether the moving party has met its burden of proving that there are no genuine disputes of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion. See Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005).

Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (alteration in original) (quotation and citation omitted). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996). On the other hand, summary judgment must be denied if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." See Anderson, 477 U.S. at 250.

B. Failure to Inspect and/or Initiate a Work Order

It is undisputed that a USMA liaison officer was on site at Building 845 five days a week, and that the liaison officer's duties included carrying out inspections of the building. It is also undisputed that Penn employees could report issues to the liaison officer, who would submit work orders to USMA. Further, the parties agree that two work orders were, in fact, initiated for repairs to the loading dock stairs: one in April 2012 and one in August 2013. Dkt. #40-1, #40-2. The details of those repairs are also not in dispute: (1) from April 17, 2012 to April 23, 2012, fifteen hours of masonry work was performed pursuant to a work order to address broken concrete; (2) on August 21, 2013, one hour of masonry work was performed pursuant to a work order stating "pieces of concrete/plaster falling off loading dock in huge chunks (12"x8") area eroding getting worse[.]" Id.

Defendant also proffers the affidavit of Anthony Delfini (DPW Engineer Technician at

-3-

West Point). Dkt. #40. According to Mr. Delfini:

> In August 2013, another work order was initiated for additional masonry work on top of that previously completed in April 2012, as the area in question was continuing to erode with pieces of concrete falling off. . . . [O]nly about an hour of labor was available to be carried out at this time and total repair of the loading dock stairs was incomplete.
>
> Because there were limited funds available to cover all work orders across West Point, the repair work to the loading dock stairs was not able to be completed until funding for a contract was awarded earlier this year. The loading dock stairs were replaced as of May 2019.

Id. at ¶¶ 6-7.

Based upon the evidence above, defendant argues that the discretionary function exception applies because "the facility was in fact inspected and work orders *were* initiated for the loading-dock steps at issue prior to [p]laintiff's alleged accident in May 2014." Dkt. #38, at 2 (emphasis in original). Plaintiff responds:

> Although Mr. Delfini avers via his declaration that the project was "incomplete," there is no basis to determine from the evidence submitted that inspections were made or work orders generated between the August 2013 repairs and the date of the accident. There is no evidence of a discretionary budgeting decision to leave work incomplete, e.g., a work order placed in August 2013, but marked for completion at some later date due to prioritization of other projects, or a work order modified to delineate piecemeal elements of a restoration project until completion over a course of time. To the contrary, the work orders indicate that the work *was* complete. And in the interim between completion and Mr. Vieira's accident, there is no evidence of inspection or generation of work orders. The next work order was awarded in January 2019.

Dkt. #44-2, at 3-4. I agree. Based upon the record evidence, a reasonable jury could conclude that defendant failed to inspect the loading dock (either before or after the August 2013 repairs) and failed to initiate a work order to repair or replace the loading dock stairs between August 2013 and the date of plaintiff's accident. Accordingly, defendant is not entitled to summary judgment on plaintiff's claim grounded upon defendant's failure to inspect and/or to initiate a work order.

C. Failure to Warn

"Under New York law, landowners and business proprietors have a duty to maintain their properties in reasonably safe condition. In addition, New York law imposes a duty to warn where a person could not reasonably be expected to anticipate a dangerous condition." Bailey v. Seaboard Barge Corp., 385 F. Supp.2d 310, 314 (S.D.N.Y. 2005)(citations omitted).[1] Here, defendant asserts–and plaintiff does not dispute–that throughout his employment with Penn, plaintiff "was aware that the docks at Building 845, including the one at which he was allegedly injured, were 'decrepit' and 'falling apart,' with 'pillars rotted out.'" Dkt. #39, ¶ 16, #44-1, at 3. Thus, defendant argues: "given [p]laintiff's conceded actual knowledge of the alleged hazard, as a matter of law, he may not assert that the Government is liable for his alleged fall based on a failure to warn." Dkt. #38, at 9.

Plaintiff argues, "notwithstanding the fact that Mr. Vieira knew of the condition of the stairs," that his failure to warn claim is viable because "the defendant provided no alternative means of ingress or egress to access his truck, which access was necessary to the performance of his job functions." Dkt. #44-2, at 5-6. In support of this contention, plaintiff cites Comeau v. Wray, 241 A.D.2d 602, 659 N.Y.S.2d 347 (3d Dep't 1997). In *Comeau*, a deliveryman sued the property owners after falling on the stairs leading to the root cellar. Id. at 602-03. The property owners (who were aware of the deteriorating condition of the stairs and knew plaintiff had to go into the cellar) moved for summary judgment on the ground, *inter alia*, that they had no duty to

---

[1] Because waiver of sovereign immunity occurs "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred[,] [28 U.S.C. § 1346(b)(1)], the FTCA directs courts to consult state law to determine whether the government is liable for the torts of its employees." Liranzo v. United States, 690 F.3d 78, 84–86 (2d Cir.2012) (citation omitted).

warn plaintiff because he was fully aware of the stairs' defective condition. Id. at 603. The Third Department rejected that argument, stating that the property owners "overlook the rule that landowners, who have or should have reason to expect that persons will find it necessary to encounter the obvious danger, owe a duty of reasonable care to either warn such persons of the danger or to take other reasonable steps to protect them from it." Id. (citation omitted).

Here, in reply, defendant argues that plaintiff proffers no evidence that he lacked other means of ingress and egress to carry out his job function – in other words, that he had no choice but to use these particular steps. Dkt. #45, at 5. Defendant also notes that plaintiff testified, at deposition, that Building 845 had three operational loading docks. Dkt. #46-1, at 3-4. Defendant is correct: apart from plaintiff's conclusory assertion, there is no record evidence from which a reasonable jury could infer that plaintiff had no choice but to utilize the loading dock at issue in order to perform his job duties. Thus, given that plaintiff concedes actual knowledge of the alleged hazard, defendant is entitled to summary judgment on plaintiff's claim grounded upon defendant's failure to warn.

## CONCLUSION

Accordingly, defendant's motion for summary judgment is **GRANTED IN PART**, to the extent that plaintiff's claim based upon defendant's failure to warn is dismissed, and **DENIED** as to plaintiff's claim based upon defendant's failure to inspect and/or to initiate a work order.

The Court will conduct a telephone conference on Friday, January 17, 2020 at 11:00 a.m.

The Clerk of the Court is respectfully requested to terminate the pending motion (Docket #37).

Dated:  December 17, 2019
       White Plains, NY

**SO ORDERED.**

_____
PAUL E. DAVISON, U.S.M.J.